```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

LEVI HOLDING, LLC dba Nino's
Bakery,

      Plaintiff,

v.                                Case No:   2:18-cv-361-FtM-29MRM

SCOTTSDALE         INSURANCE
COMPANY,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Abate Count II (Doc. #71) filed on February 18, 2020.  Plaintiff filed a Response (Doc. #72) in opposition on March 3, 2020.  For the reasons set forth below, the Court denies the motion to dismiss, strikes the request for punitive damages in Count II, and grants the motion to abate Count II.

**I.**

Plaintiff Levi Holding, LLC, dba Nino's Bakery, (plaintiff or Nino's Bakery) purchased an insurance policy (the Policy) from defendant Scottsdale Insurance Company (defendant or Scottsdale) insuring real property in Punta Gorda, Florida (the Property). The Policy was in effect when the Property suffered direct physical damage caused by Hurricane Irma on or about September 10, 2017.

On or about September 13, 2017, plaintiff made a timely claim, which defendant acknowledged and assigned a claim number.

On November 27, 2017, a public adjuster retained by plaintiff prepared a report setting forth an estimate of $378,234.34 to repair the hurricane damage to the Property. (Doc. #7-2, Exh. B.) The report also indicated that Nino's Bakery would have to be shut down during the restoration process while the repairs were completed. (Doc. #7-2, pp. 2, 44.) This report was provided to Scottsdale on or about December 18, 2017. (Doc. #12, ¶ 6.)

Defendant eventually accepted coverage for the wind and water damage due to Hurricane Irma, but denied certain other coverage, such as for food spoilage. (Doc. #3, ¶¶ 4,5; Doc. #12, ¶ 2.) On January 26, 2018, Scottsdale paid plaintiff $15,495.18 (Doc. #12, ¶9), followed by a supplemental payment of $31,782.36 on March 29, 2018 (id., ¶¶ 10-11). The parties, however, continued to dispute the amount of covered losses.

On or about April 23, 2018, plaintiff filed a Complaint against Scottsdale in state court for breach of the insurance Policy (Doc. #1-1) and submitted a Civil Remedy Notice of Insurer Violation (CRN). The state court Complaint alleged breach of contract based on Scottsdale's refusal to pay the full scope of damages due under the Policy, including "the full cost of repair of the damage to the property, including but not limited to,

repairs to the business, loss of business and all other coverages afforded by the policy for this loss." (Doc. #2, ¶ 16.)

On or about April 25, 2018, defendant invoked its right under the Policy to an appraisal. (Doc. #3, ¶¶ 7-8.) On May 15, 2018, defendant filed a Motion to Abate Pending Completion of Appraisal in state court. (Doc. #3.) Plaintiff opposed an appraisal, asserting that because Scottsdale was in breach of the Policy, Nino's Bakery no longer had to abide by the terms and conditions of the Policy. (Doc. #7, ¶¶ 17-18.) On July 25, 2018, the undersigned[1] granted the motion for an appraisal and otherwise stayed the case. (Doc. #19.)

On February 8, 2019, an appraisal award was issued in favor of plaintiff in the amount of $225,496.16 on the building and $26,687.54 for business personal property. On February 11, 2019, plaintiff filed a Motion to Confirm Appraisal Award and for Entry of Final Judgment (Doc. #25). The motion stated in part that "[b]usiness Income Loss was not appraised and is still subject to a judicial determination." (Doc. #25, ¶ 11.) Scottsdale agreed that Business Income Loss was not appraised, stating that the Policy provided coverage for "actual" loss of business during the period of restoration, and therefore that portion of plaintiff's

---

[1] Scottsdale removed the case to federal court on May 23, 2018. (Doc. #1.)

claim was not yet ripe. (Doc. #27, ¶25.) On or about March 7, 2019, within the 30-day Policy provision, Scottsdale paid $168,906.16 to plaintiff, which was the amount of the appraisal award less prior payments and the deductible. (Doc. #30.) In the cover letter accompanying payment, Scottsdale noted that the issue of lost business income appeared to still be outstanding, and requested documentation supporting that claim. (Doc. #32, p. 3.)

On April 29, 2019, the Court denied the motion for confirmation as premature, and reopened the case so defendant could file an Answer on the remaining issues. (Doc. #31.)

On May 13, 2019, Scottsdale sought to further abate the proceedings. (Doc. #32.) Scottsdale asserted that plaintiff had not supported or properly submitted a business loss claim, and therefore Scottsdale could not determine whether this claim was covered by the Policy. (Id., ¶¶ 10-12.) Scottsdale asserted, contrary to its prior position that the business loss claim was not ripe, that the business income loss claim, if properly submitted by plaintiff, would have been included in the former appraisal process. (Id. at ¶ 13.) Scottsdale requested to abate all proceedings until: (1) plaintiff properly submitted a business loss claim and supporting documentation, (2) Scottsdale had the opportunity to properly investigate the claim and make a coverage determination, and (3) if the parties disagreed on the scope of

the loss, the appraisal process was complete. (Id. at ¶ 17.) On June 7, 2019, the Court denied the motion. (Doc. #37.)

On July 30, 2019, defendant filed an Answer, Affirmative Defenses, Motion to Strike and Demand for Jury Trial (Doc. #43) to the original Complaint. On the same day, plaintiff sought leave to file an amended complaint. (Doc. #42.) Over defendant's objections (Doc. #48), the magistrate judge entered an Order (Doc. #55) granting leave to file an amended complaint.

The current operative pleading is the Second Amended Complaint (Doc. #70). Count I asserts a breach of contract action based on the failure to pay the business interruption loss portion of plaintiff's claim (the other portions of plaintiff's insurance claim having been mooted by payment of the appraisal award). Count II adds a bad faith action pursuant to Fla. Stat. § 624.155. Defendant now seeks dismissal of both counts.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

5

above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

In Count I of the Second Amended Complaint, plaintiff alleges a claim for "Breach of Contract – Business Interruption." (Doc. #70, p. 7.) Pursuant to Rule 12(b)(6), Scottsdale argues that Count I fails to state a claim upon which relief may be granted. (Doc. #71, pp. 4-9.) The Court disagrees.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Marchisio v. Carrington Mortgage Servs., LLC, 919 F.3d 1288, 1313 (11th Cir. 2019) (quoting Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009))(footnote omitted). See also People's Tr. Ins. Co. v. Valentin, __ So. 3d __, 3D19-58, 2020 WL 1542061, at *2 (Fla. 3d DCA Apr. 1, 2020). The Second Amended Complaint sufficiently pleads all these elements.

Count I asserts that there was a contract between Nino's Bakery and Scottsdale, i.e., the insurance Policy (Doc. #70, ¶¶ 5, 9), and that Nino's Bakery made a timely application for benefits under the Policy (id. at ¶ 10). Count I outlines the events leading up to the appraisal and the payment of the appraisal award. (Id. at ¶¶ 12-34.) Count I further alleges that the business interruption portion of plaintiff's claim under the Policy was not addressed in the appraisal, that repairs have gone forward at the Property, and that prior to and during the repairs, its bakery

7

business was shut down, leading to an interruption in the business. (Id. at ¶ 35.) Plaintiff alleges that it has provided defendant with documents to show the actual business income loss sustained. (Id. at ¶ 36.) Count I further alleges that Scottsdale had a duty to pay for the business interruption damage (id. at ¶ 50), that Scottsdale breached this duty by failing to pay (id. at ¶ 51), and that damages resulted (id. at ¶ 52).

No further factual details are required to satisfy the Rule 12(b)(6) standard. Plaintiff is entitled to reasonable inferences from the facts set forth in the Second Amended Complaint. Iqbal, 556 U.S. at 678. Contrary to defendant's assertion (Doc. #71, pp. 4-5), the business interruption claim was part of the original Complaint (Doc. #2, ¶ 16), and was known by defendant at least by December 18, 2017, when it received plaintiff's public adjustor report. Defendant's current position that "the business interruption should have been included in the appraisal process" (Doc. #71, p. 7) contradicts its prior position that business interruption was not ripe. This portion of defendant's motion to dismiss Count I is denied.

**IV.**

In Count II of the Second Amended Complaint, plaintiff alleges a claim for "Unfair Claims Practices." Plaintiff alleges that Florida statutes impose certain minimum requirements for handling insurance claims (Doc. #70, ¶ 58), and that defendant violated

8

some of the requirements. Specifically, Count II alleges that defendant: (1) failed to treat its insured with honesty, fairness and with due regards for the interests of the insured (id. at ¶59); (2) failed in good faith to settle the subject claim (id. at ¶¶ 60-61); (3) failed to adopt and implement standards for the proper investigation and settlement of claims by failing to properly investigate the damages and refusing to pay plaintiff for all repairs to the Property (id. at ¶ 62); (4) failed to act promptly upon communications with respect to an insured's claim by delaying response to plaintiff's request to re-visit the adequacy of its payment (id. at ¶ 63); and (5) failed to promptly provide a reasonable explanation in writing to the insured of the basis of the Policy for offer of a compromised settlement (id. at ¶ 64). Count II asserts that defendant's wrongful acts were a direct and proximate result of damages to plaintiffs. (Id. at ¶ 69.) Plaintiff also alleges, "upon information and belief," that defendant has a pattern and practice of paying minimum amounts owed on claims, and then waiting for a lawsuit, the frequency of which establishes willful and malicious conduct, warranting punitive damages. (Id. at ¶ 66.)

Defendant seeks to dismiss or abate Count II as premature until Count I is fully resolved. Defendant also seeks to dismiss Count II because the Civil Remedy Notice is factually and legally deficient, there is insufficient factual support provided for the

allegations, and plaintiff cannot show damages. (Doc. #71, pp. 9-11.)

### A. Prerequisites of Bad Faith Claim

In 1982, the Florida Legislature enacted Chapter 624.155 of the Florida Statutes, a portion of which created a statutory first-party bad-faith cause of action (and codified prior decisions authorizing a third party to bring a bad-faith action under the common law.) QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 546 (Fla. 2012). In pertinent part, the statute provides:

> (1) Any person may bring a civil action against an insurer when such person is damaged: . . . (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
>
> 2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
>
> 3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Fla. Stat. § 624.155(1)(b). However, "bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until

10

there is a determination of liability and extent of damages owed on the first-party insurance contract." Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1276 (Fla. 2000) (citing Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289 (Fla. 1991)). Additionally, "[a]s a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation." Fla Stat. § 624.155(3)(a). Thus, there are three prerequisites to filing a statutory bad-faith claim: (1) determination of the insurer's liability for coverage; (2) determination of the extent of the insured's damages; and (3) filing the required § 624.155(3)(a) notice. Landers v. State Farm Florida Ins. Co., 234 So. 3d 856, 859 (Fla. 5th DCA 2018) (citing Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 612 (Fla. 4th DCA 2014)).

### B. Ripeness of Bad Faith Claim

Scottsdale asserts that a bad faith claim does not exist in this case because there has not been a resolution in favor of plaintiff as to coverage and damages for the underlying claim. (Doc. #71, pp. 9-11.) The Court agrees that there has not been a complete determination in this case.

Normally, resolution of a claim by way of the appraisal process is sufficient to satisfy the first two requirements of a bad faith claim. Cammarata, 152 So. 3d at 612 (appraisal award was "favorable resolution" of action for insurance benefits, so

that insured satisfied prerequisite to filing a bad faith claim); Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co., 100 So. 3d 1155, 1158 (Fla. 4th DCA 2012)(same); Landers, 234 So. 3d at 859; Hunt v. State Farm Ins. Co., 112 So. 3d 547, 549 (Fla. 2d DCA 2013); Bryant v. GeoVera Specialty Ins. Co., 271 So. 3d 1013, 1022 (Fla. 4th DCA 2019).  The payment does not have to be at the policy limits to qualify as a favorable resolution.  Barton v. Capitol Preferred Ins. Co. Inc., 208 So. 3d 239, 243-44 (5th DCA 2016).

In this case, liability for coverage and the extent of damages have been partially determined, and an appraisal award for those damages was paid.  But it is undisputed that the business loss claim was not resolved by the appraisal, and is the focus of Count I of the Second Amended Complaint.  Until the business loss claim in Count I is resolved, Count II is not ripe.  While not a "new claim" as defendant states (Doc. #71, p. 10), defendant's handling of the business loss claim is part of the bases for the bad faith claim.  Accordingly, other than the resolution of issues in this Opinion and Order, the Court will stay proceedings as to Count II until further order.

**C. Notice Requirements**

As a condition precedent, the insurer must be given 60 days written notice of a violation, and the notice must "state with specificity":

> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
>
> 2. The facts and circumstances giving rise to the violation.
>
> 3. The name of any individual involved in the violation.
>
> 4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.
>
> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(b). It is undisputed that this CRN was provided to the State of Florida and defendant. Defendant asserts, however, that the "shotgun-blast" CRN it received "is deficient as a matter of law because it fails to specify the information expressly required by the statute." (Doc. #71, p. 18.)

The Court rejects defendant's argument. As the Florida statute specifically states, the required notice is a "condition precedent" to filing suit. As such, it is sufficiently pled. Rule 9(c) provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c).

13

> Should a defendant make that denial, "[t]he plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied." Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1010 (11th Cir.1982). Should a defendant "not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked." Id. at 1009.

Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1224 (11th Cir. 2010). Here, the First Amended Complaint sufficiently alleges compliance with the required condition precedent. (See Doc. #70, ¶¶ 25, 39.)

### D. Sufficiency of Count II

Defendant also argues that Count II is not sufficiently plead under the Rule 12(b)(6) standard discussed earlier. (Doc. #71, pp. 11-15.) The Court disagrees. Giving plaintiff the reasonable inferences to which he is entitled under Iqbal, the Court finds that Count II adequately states a claim upon which relief may be granted.

### E. Punitive Damages

Defendant also argues that plaintiff has not adequately pled punitive damages. (Doc. #71, pp. 15-17.) The Court agrees with this argument. Rather, the applicable statute states:

> No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

14

> (a) Willful, wanton, and malicious;
>
> (b) In reckless disregard for the rights of any insured; or
>
> (c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Fla. Stat. § 624.155 (5). As the undersigned has previously stated,

> In cases where the Court exercises diversity jurisdiction, a federal procedural rule governs over conflicting state law. Cohen v. Office Depot, Inc., 184 F.3d 1292, 1298 (11th Cir. 1999), vacated in part on other grounds, 204 F.3d 1069, 1076-77, 1083 (11th Cir. 2000). The Eleventh Circuit has held that the portion of Fla. Stat. § 768.72 prohibiting pleading punitive damages in the initial complaint conflicts with Federal Rule of Civil Procedure 8(a)(3), and therefore does not apply.[] Id. However, the court also determined the substantive pleading standard of Section 768.72 (requiring a "reasonable showing" that demonstrates "a reasonable basis for recovery of such damages") does not conflict with Fed. R. Civ. P. 8(a)(2) (permitting a "short and plain statement of the claim") because a prayer for punitive damages is not a "claim" within the meaning of that Rule. Id. at 1297; see also Hogan v. Provident Life & Accident Ins. Co., No. 6:08-cv-1897-Orl-19KRS, 2009 WL 2169850, at *5 (M.D. Fla. July 20, 2009). Thus, the substantive pleading requirements for punitive damages in Fla. Stat. § 768.72 remain intact even when read in conjunction with Fed. R. Civ. P. 8(a)(2). Porter v. Ogden, Newell, & Welch, 241 F.3d 1334, 1340-41 (11th Cir.2001) ("Under Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. Instead, a plaintiff must plead specific acts committed by a defendant.") (internal citations omitted). The standard articulated in Porter is consistent with the Twombly-Iqbal pleading

> standard, in that they both call for more than legal conclusions in the pleadings. See Cruz v. Mylan, Inc., No. 8:09–CV-1106-T17-EAJ, 2010 WL 598688, at *4 (M.D. Fla. Feb.17, 2010); Hogan, 2009 WL 2169850, at *5.
>
> Under Florida law, any person may bring a civil action against an insurer when the insurer violates certain statutory provisions identified in Fla. Stat. § 624.155(1)(a) or commits certain acts enumerated in Fla. Stat. § 624.155(1)(b). In order to obtain an award for punitive damages, the plaintiff must prove that "the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are: (a) Willful, wanton, and malicious; (b) In reckless disregard for the rights of any insured; or (c) In reckless disregard for the rights of a beneficiary under a life insurance contract." Fla. Stat. § 624.155(5).

Gerlach v. Cincinnati Ins. Co., 2:12-CV-322-FTM-29, 2012 WL 5507463, at *2 (M.D. Fla. Nov. 14, 2012)(footnote omitted).

Here, the First Amended Complaint suffers from much the same deficiencies as in Gerlach.

> Plaintiffs' claim that defendant's actions "were performed with such frequency as to constitute a general business practice" is simply a conclusory allegation and formulaic recitation of the language contained in Fla. Stat. § 624.155(5). Furthermore, the allegations contained in Paragraph 20(a)-(c) largely parrot the language contained in Fla. Stat. § 62 6.9541(1)(i)(2)-(3).[] Such legal conclusions, couched as factual allegations, are not entitled to the presumption of truth. Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). In the absence of factual support, the Court is unable to make the leap from a single incident of alleged misconduct to a general business practice. See Hogan, 2009 WL 2169850, at *7

16

>(dismissing plaintiff's claim for punitive damages because the allegations in the complaint were conclusory and largely parroted the statutory language); 316, Inc. v. Maryland Cas. Co., 625 F. Supp. 2d 1179, 1182-84 (N.D. Fla. 2008) (holding that "the allegations about Defendant's business practices are untethered to any supporting factual allegations and are impermissibly speculative, rather than plausible.").

Gerlach, 2:12-CV-322-FTM-29, 2012 WL 5507463, at *3 (footnote omitted). The request for punitive damages is stricken based on the reasoning in Gerlach.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Abate Count II (Doc. #71) **DENIED** as to the Motion to Dismiss, and is **GRANTED** as to the Motion to Abate Count II. The request for punitive damages in Court II is stricken. Further proceedings as to Court II are **stayed** until further order of the Court.

**DONE AND ORDERED** at Fort Myers, Florida, this __28th__ day of April, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record